___ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

JUL 6 2015

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

WDM/LKEK: USAO2015R00302

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * CRIMINAL NO. PJM 15-0258 |
| ALDAIR GARCIA-MIRANDA, <br> a/k/a "Callado," <br> a/k/a "Poseido," <br> SELVIN RAYMUNDO SALAZAR, <br> a/k/a "Little," <br> a/k/a "Inquieto," and <br> RAUL ERNESTO <br> LANDAVERDE-GIRON, <br> a/k/a "Decente," <br> a/k/a "Humilde" | * (Conspiracy to Participate in a Racketeering Enterprise, 18 U.S.C. § 1962(d); Conspiracy to Commit Murder in Aid of Racketeering, 18 U.S.C. § 1959(a)(5); Attempted Murder in Aid of Racketeering, 18 U.S.C. § 1959(a)(5); Use, Carry, Brandish, and Discharge a Firearm During and in Relation to a Crime of Violence, 18 U.S.C. § 924(c); and Aiding and Abetting, 18 U.S.C. § 2) |
| Defendants | * |

*******

## SUPERSEDING INDICTMENT

### COUNT ONE
(Conspiracy to Participate in a Racketeering Enterprise)

The Grand Jury for the District of Maryland charges that:

At all times relevant to this Superseding Indictment:

### Introduction

1. *La Mara Salvatrucha,* also known as the MS-13 gang ("MS-13"), was a gang composed primarily of immigrants or descendants of immigrants from El Salvador, with members operating in the State of Maryland, including in Montgomery County and Prince George's County, and throughout the United States.

2. The name "Mara Salvatrucha" was a combination of several slang terms. The word "Mara" was the term used in El Salvador for "gang." The phrase "Salvatrucha" was a

combination of the words "Salva," which was an abbreviation for "Salvadoran," and "trucha," which was a slang term for "fear us," "look out," or "heads up."

3.  In the United States, MS-13 has been functioning since at least the 1980s. MS-13 originated in Los Angeles, California, where MS-13 members banded together for protection against the larger Mexican groups. MS-13 evolved into a gang that engaged in turf wars for the control of drug distribution locations. MS-13 quickly spread to states across the country, including Maryland.

4.  MS-13 was a national and international criminal organization and was one of the largest street gangs in the United States. Gang members actively recruited members, including juveniles, from communities with a large number of Salvadoran immigrants.

5.  **ALDAIR GARCIA-MIRANDA ("GARCIA-MIRANDA"), SELVIN RAYMUNDO SALAZAR ("SALAZAR"), RAUL ERNESTO LANDAVERDE-GIRON ("LANDAVERDE-GIRON")**, and others known and unknown to the Grand Jury, were members and associates of MS-13.

6.  Members of MS-13 from time to time signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar tattoos, often written in gothic lettering. Members also signified their membership through tattoos of devil horns in various places on their bodies. Members sometimes avoided conspicuous MS-13 tattoos, instead wearing discreet ones such as "503," spider webs, three dots in a triangle formation signifying "vida loca," or clown faces with phrases such as "laugh now, cry later." Some MS-13 members have chosen not to have tattoos at all, or to have them placed on areas such as the hairline where they can be easily covered, in order to conceal their gang affiliation from law enforcement.

7. The gang colors of MS-13 were blue, black, and white, and members often wore clothing, particularly sports jerseys, with the number "13," or with numbers that, when added together, totaled 13, such as "76." MS-13 members also wore blue and white clothing to represent their membership, including blue and white shoes such as the Nike "Cortez." As with tattoos, some MS-13 members selected more discreet ways of dressing in order to signify their membership and at the same time avoid detection by law enforcement.

8. MS-13 members referred to one another by their gang names, or monikers, and often did not know fellow gang members except by their gang names.

9. Members of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons. MS-13 members required that all individuals show respect and deference to the gang and its membership. To protect the gang and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence. MS-13's creed was based on one of its mottos, "*Mata, roba, viola, controlla*," which translated in sum and substance to, "Kill, steal, rape, control."

10. Members and associates of MS-13 frequently engaged in criminal activity, including, but not limited to, murder, assault, and extortion, as well as attempts and conspiracies to commit such offenses. MS-13 members were required to commit acts of violence to maintain membership and discipline within the gang, as well as against rival gang members. Participation in criminal activity by a member, particularly in violent acts directed at rival gangs or as directed by gang leadership, increased the respect accorded to that member, resulted in that member maintaining or increasing his position in the gang, and opened the door to a promotion to a leadership position. One of the principal rules of MS-13 was that its members must attack and kill

rivals whenever possible. Rivals were often referred to as "chavalas." MS-13, in the areas of Prince George's County and Montgomery County, Maryland, maintained rivalries with the 18th Street Gang, Latin Kings, Adelphi Crew, and Lewisdale Crew, among others.

11. Prospective members who sought to join MS-13 were required to complete an initiation process. Individuals who associated and committed crimes with the gang, but were not prospective members, were called "paisas." Individuals who were attempting to join the gang were called "chequejos," or "cheqs." Chequejos underwent a probationary period during which they were required to commit crimes on behalf of MS-13 to achieve trust and prove their loyalty to the gang. To join MS-13 and become full members or "homeboys," prospective members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang. During that initiation, other members of MS-13 would beat the new member, usually until a gang member finished counting aloud to the number thirteen, representing the "13" in MS-13.

12. MS-13 was an international criminal organization, and was organized in Maryland and elsewhere into "cliques," that is, smaller groups operating in a specific city or region. Cliques operated under the umbrella rules of MS-13. MS-13 cliques often worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement. In Maryland and the surrounding area, these cliques included Normandie Locos Salvatrucha ("NLS" or "Normandie Clique"), Sailors Locos Salvatrucha Westside ("SLSW"), Parkview Locos Salvatrucha ("PVLS"), Guanacos Little Psychos Salvatrucha ("GLS"), Weedons Locos Salvatrucha ("WLS"), Peajes Locos Salvatrucha ("PLS"), Langley Park Salvatrucha ("LPS"), Fulton Locos Salvatrucha ("FLS"), Dalmacia Criminal Locos Salvatrucha ("DCLS"), and Western Locos Salvatrucha ("WLS").

13. **GARCIA-MIRANDA**, **SALAZAR**, and **LANDAVERDE-GIRON** were members and associates of the Normandie Clique of MS-13.

14. Each clique was presided over by the "First Word," the leader or president of the clique. The leader was also referred to as "Primera Palabra," or "Shotcaller." The "Second Word," or "Segundo Palabra," was the second-in-command of the clique. General members were required to take orders from the First Word and Second Word.

15. For a period of time beginning at least in or about late 2013 or early 2014, **GARCIA-MIRANDA** and **SALAZAR** served as the leaders of the Normandie Clique in the area of Prince George's County and Montgomery County, Maryland.

16. MS-13 cliques kept in contact and reported to the supreme Shotcallers for their respective cliques, who were oftentimes based in El Salvador. Cliques contacted their leaders based in El Salvador using cellular telephones during clique meetings to keep them updated on gang business, for advice, and to resolve disagreements regarding operations among local cliques. Incarcerated clique leaders based in El Salvador regularly communicated and directed orders to Maryland-based cliques through phones smuggled into Salvadoran prisons.

17. MS-13 members met on a regular basis to, among other things, discuss gang affairs and report on acts of violence committed by their members, with the goal of inciting and encouraging further violence. Each clique held clique meetings where business specific to that clique was discussed. Any perceived indiscretions by members or violations of MS-13 rules were talked about at clique meetings and punishments or "violations" were issued. Violations often took the form of beatings by fellow MS-13 members. More serious violations resulted in the issuance of a "greenlight." A greenlight was an order and/or approval to kill.

18. MS-13 leaders from various cliques also held regional meetings to discuss issues between cliques and discuss criminal ventures among the cliques. Clique leaders from across the United States, from other countries, and within regions of the United States would meet or communicate by telephone conference to discuss gang rules and gang business, to resolve problems or issues among cliques and gang members of different cliques, and to unite gang members from across the country.

19. MS-13 received money and income from sources including member dues and the extortion or "taxing" of brothels and other illegitimate businesses. Such funds were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members who were imprisoned in the United States, both inside and outside of Maryland, and in El Salvador.

20. MS-13 members communicated about gang activities with other MS-13 members in Maryland and elsewhere using mobile telephones, telephone text messages, social media such as Facebook and e-mail accounts, and other modes of communication. Additionally, MS-13 members used transnational and international money wire transfers to conduct and promote gang activities.

### The Racketeering Enterprise

21. MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("the Enterprise"). The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

### Purposes of the Enterprise

22. The purposes of the Enterprise included:

a. Preserving and protecting the power, territory, and profits of the Enterprise through the use of intimidation and violence, including assaults, murders, and threats of violence;

b. Promoting and enhancing the Enterprise and its members' and associates' activities;

c. Enriching the members and associates of the Enterprise through extortion;

d. Keeping victims and potential witnesses in fear of the Enterprise and in fear of its members and associates through threats of violence and actual violence; and

e. Providing assistance to members and associates in order to hinder, obstruct and prevent law enforcement officers from identifying offenders, apprehending offenders, and trying and punishing offenders.

## Means and Methods of the Enterprise

23. Among the means and methods by which the defendants and others conducted and participated in the affairs of the Enterprise were the following:

a. Members and associates of the Enterprise used, attempted to use, and conspired to use extortion;

b. Members and associates of the Enterprise committed, attempted, and threatened to commit acts of violence, including murder, to protect and expand the Enterprise's criminal operations;

c. Members and associates of the Enterprise promoted a climate of fear through violence and threats of violence; and

d. Members and associates of the Enterprise used and threatened to use physical violence against various individuals.

## The Racketeering Conspiracy

24. Beginning on a date unknown to the Grand Jury, but at least prior to in or about 2012, and continuing through at least in or about 2014, in the District of Maryland and elsewhere,

**ALDAIR GARCIA-MIRANDA,**
a/k/a "Callado,"
a/k/a "Poseido,"
**SELVIN RAYMUNDO SALAZAR,**
a/k/a "Little,"
a/k/a "Inquieto," and
**RAUL ERNESTO LANDAVERDE-GIRON,**
a/k/a "Decente,"
a/k/a "Humilde"

each being a person employed by and associated with MS-13, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, together with others known and unknown to the Grand Jury, did knowingly and intentionally conspire to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1) and (5), which pattern of racketeering activity consisted of multiple acts involving murder, in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, and the Common Law of Maryland, punishable pursuant to Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205 and 2-206; and multiple acts involving extortion, in violation of Maryland Code, Criminal Law §§ 3-701 and 3-705, and the Common Law of Maryland.

## Manner and Means of the Racketeering Conspiracy

25. Among the manners and means used by the defendants and their co-conspirators to achieve the objects of the conspiracy were the following:

    a. The defendants, as members of MS-13, met and communicated with other MS-13 gang members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; MS-13 members who were

arrested or incarcerated; the disciplining of MS-13 members; police interactions with MS-13 members; the identities of individuals suspected of cooperating with law enforcement and the proposed actions to be taken against them; plans and agreements regarding the commission of future crimes, as well as ways to conceal these crimes; and the enforcement of gang rules.

      b.      MS-13 members also communicated with other MS-13 members in Maryland and elsewhere, and represented their gang allegiance, through social media such as Facebook, including by posting photographs of themselves with other gang members, showing gang hand signs, wearing colors or clothing associated with MS-13, and posing with weapons or gang-related graffiti, and by sending and/or posting messages referencing their affiliation with MS-13.

      c.      The defendants and other members and associates of MS-13 agreed to purchase, maintain, and circulate weapons and firearms for use in criminal activity by MS-13 members.

      d.      MS-13 received money and income from sources including the extortion of persons engaged in business activities. Such funds were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members, including those imprisoned in the United States, inside and outside of Maryland, and in El Salvador.

      e.      The defendants and other members and associates of MS-13 agreed that acts of violence, including murder and attempted murder would be committed by members and associates of MS-13 against rival gang members and others when it suited the Enterprise's purposes. MS-13 members also used violence to impose discipline within the gang.

      f.      MS-13 would obstruct justice and harm, threaten, and intimidate witnesses and victims who cooperated with law enforcement.

g. The defendants and other members and associates of MS-13 would investigate rival gang members or other persons targeted for violence; would obtain information about such targets, including locations frequented by them; and would use such information in their plans to attack such targets.

h. The defendants and other members and associates of the gang would and did agree that acts of murder, including conspiracy and attempts to commit murder, and other acts of violence, would be committed by members and associates of MS-13 against rival gang members and persons deemed as threats to MS-13 and for the purpose of imposing discipline within the gang, and on other occasions as deemed necessary.

### Overt Acts

26. In furtherance of the conspiracy, and to effect the illegal objects thereof, the defendants and their co-conspirators performed, participated in, and did the following acts, among others, in the District of Maryland and elsewhere:

a. On or about February 28, 2013, in the Langley Park area of Prince George's County, **SALAZAR** possessed a firearm of the Normandie Clique of MS-13 (the "Normandie Clique firearm").

b. On or about February 28, 2013, **SALAZAR** traveled to the Langley Park area of Prince George's County with the Normandie Clique firearm.

c. On or about February 28, 2013, **SALAZAR** met with other MS-13 members in the Langley Park area of Prince George's County and discussed searching for and attacking rival gang members or, chavalas.

d. On or about February 28, 2013, **SALAZAR** and other MS-13 members traveled to the Lewisdale area of Prince George's County searching for chavalas.

e. On or about February 28, 2013, **SALAZAR** and other MS-13 members used the Normandie Clique firearm to shoot and kill a person known to the Grand Jury and identified for the purposes of this Superseding Indictment as Victim-1 because Victim-1 was a suspected chavala.

f. On or about February 28, 2013, **SALAZAR** and other MS-13 members hid and concealed the Normandie Clique firearm so that it could be used by MS-13 members as needed in the future.

g. In or about 2013 and 2014, in the area of Montgomery County, Maryland, **SALAZAR** threatened a person known to the Grand Jury and identified for the purposes of this Superseding Indictment as Victim-2 with violence by MS-13 if Victim-2 did not pay sums of money to **SALAZAR** as "rent."

h. In or about 2013 and 2014, in response to **SALAZAR's** threats, Victim-2 paid sums of money to **LANDAVERDE-GIRON** as rent payments to MS-13.

i. In or about November of 2013, **GARCIA-MIRANDA**, **LANDAVERDE-GIRON**, and others known and unknown to the Grand Jury, planned and discussed the killing of a person known to the Grand Jury and identified for the purposes of this Superseding Indictment as Victim-3, who had fled from El Salvador to the Frederick, Maryland area to escape a "greenlight," or order to kill, that had been imposed against Victim-3 by MS-13 in El Salvador.

j. In or about November of 2013, MS-13 members in Maryland confirmed that the greenlight against Victim-3 was still in effect.

k.  On or about November 30, 2013, MS-13 members, including **GARCIA-MIRANDA** and **LANDAVERDE-GIRON**, armed themselves with knives and the Normandie Clique firearm for the purpose of killing Victim-3.

l.  On or about November 30, 2013, MS-13 members lured Victim-3 to a wooded area between Greenwall Place and Hoke Place, in Frederick, Maryland with the intention of killing Victim-3.

m.  On or about November 30, 2013, MS-13 members, including **GARCIA-MIRANDA** and **LANDAVERDE-GIRON**, did kill Victim-3 by shooting him in the head utilizing the Normandie Clique firearm used in Overt Acts a-f, and stabbing him multiple times.

n.  On or about July 30, 2014, **GARCIA-MIRANDA** and **SALAZAR**, and other members and associates of MS-13, communicated and discussed attacking persons in the area of Hyattsville, Maryland, who were believed to be rival gang members and who were also believed to have taken property from an MS-13 associate.

o.  On or about July 30, 2014, **GARCIA-MIRANDA** and **SALAZAR**, along with other MS-13 members and associates, traveled to the area of the 5700 block of 30th Avenue in Hyattsville, Maryland, with firearms in their possession, for the purpose of searching for and shooting rival gang members and persons who were believed to have taken property from an MS-13 associate.

p.  On or about July 30, 2014, **GARCIA-MIRANDA** and **SALAZAR**, and another MS-13 associate, exited a Jeep Cherokee driven by another MS-13 member and walked to a nearby location where three persons known to the Grand Jury and identified for the purpose of this Superseding Indictment as Victim-4, Victim-5, and Victim-6 were walking.

12

q. On or about July 30, 2014, **GARCIA-MIRANDA** and an MS-13 associate, while in the company of **SALAZAR**, fired multiple shots from handguns, including from the Normandie Clique firearm used in Overt Acts a-f and k-m, at the victims, striking Victim-4 seven times and Victim-5 once.

r. After shooting Victim-4 and Victim-5, **GARCIA-MIRANDA** and **SALAZAR**, and the MS-13 associate, ran back to the Jeep Cherokee where the driver was waiting. The group then fled the area in the Jeep Cherokee.

s. On or about August 1, 2014, **LANDAVERDE-GIRON** took possession of the firearms used to shoot at Victim-4 and Victim-5, including the Normandie Clique firearm, and concealed those firearms.

### Special Sentencing Factors Regarding Count One

27. On or about February 28, 2013, in the District of Maryland, **SALAZAR** unlawfully conspired with others known and unknown to the Grand Jury to murder Victim-1, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

28. On or about February 28, 2013, in the District of Maryland, **SALAZAR** feloniously, willfully, and with deliberately premeditated malice, killed and murdered Victim-1, in violation of Maryland Code, Criminal Law § 2-201(a)(1).

29. On or about November 30, 2013, in the District of Maryland, **GARCIA-MIRANDA** and **LANDAVERDE-GIRON** unlawfully conspired with others known and unknown to the Grand Jury to murder Victim-3, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

13

30. On or about November 30, 2013, in the District of Maryland, **GARCIA-MIRANDA** and **LANDAVERDE-GIRON** feloniously, willfully, and with deliberately premeditated malice, killed and murdered Victim-3, in violation of Maryland Code, Criminal Law § 2-201(a)(1).

31. On or about July 30, 2014, in the District of Maryland, **GARCIA-MIRANDA** and **SALAZAR** unlawfully conspired with others known and unknown to the Grand Jury to murder Victim-4, Victim-5, and Victim-6, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

32. On or about July 30, 2014, in the District of Maryland, **GARCIA-MIRANDA** and **SALAZAR** feloniously, willfully, and with deliberately premeditated malice attempted to murder Victim-4, Victim-5, and Victim-6, in violation of Maryland Code, Criminal Law §§ 2-205 and 2-201, and the Common Law of Maryland, and punishable pursuant to Criminal Law § 1-201.

18 U.S.C. § 1962(d)

## COUNT TWO
### (Conspiracy to Commit Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 20, 22 through 23, and 26(n)-(r) of Count One of this Superseding Indictment are incorporated here.

2. MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in 18 U.S.C. § 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("the Enterprise"). The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

3. The Enterprise, through its members and associates, engaged in racketeering activity, as defined in 18 U.S.C. §§ 1959(b)(1), and 1961(1), that is acts involving murder in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, and the Common Law of Maryland, punishable pursuant to Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205, and 2-206; and acts involving extortion, in violation of Maryland Code, Criminal Law §§ 3-701, 3-705, 3-706, and the Common Law of Maryland.

4. On or about July 30, 2014, in the District of Maryland,

**ALDAIR GARCIA-MIRANDA,**
a/k/a "Callado,"
a/k/a "Poseido," and
**SELVIN RAYMUNDO SALAZAR,**
a/k/a "Little,"
a/k/a "Inquieto,"

for the purpose of gaining entrance to, and maintaining and increasing position in, MS-13, an enterprise engaged in racketeering activity, did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury to

murder Victim-4, Victim-5, and Victim-6, in violation of and punishable pursuant to Maryland Code, Criminal Law §§ 2-201 and 2-204, and the Common Law of Maryland, all in violation of 18 U.S.C. § 1959(a)(5).

18 U.S.C. § 1959(a)(5)

## COUNT THREE
### (Attempted Murder in Aid of Racketeering)

1. Paragraphs 1 through 20, 22 through 23, and 26(n)-(r) of Count One of this Superseding Indictment are incorporated here.

2. Paragraphs 2 and 3 of Count Two of this Superseding Indictment are incorporated here.

3. On or about July 30, 2014, in the District of Maryland,

**ALDAIR GARCIA-MIRANDA,**
a/k/a "Callado,"
a/k/a "Poseido," and
**SELVIN RAYMUNDO SALAZAR,**
a/k/a "Little,"
a/k/a "Inquieto,"

for the purpose of gaining entrance to, and maintaining and increasing position in, MS-13, an enterprise engaged in racketeering activity, feloniously, willfully, and with deliberately premeditated malice, attempted to murder persons known to the Grand Jury and identified for the purposes of this Indictment as Victim-4, Victim-5, and Victim-6, which crime constituted attempted murder in violation of Maryland Code, Criminal Law §§ 2-205 and 2-206, all in violation of 18 U.S.C. § 1959(a)(5).

18 U.S.C. § 1959(a)(5)
18 U.S.C. § 2

# COUNT FOUR
## (Use, Carry, Brandish, and Discharge a Firearm During and In Relation to a Crime of Violence)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 20, 22 through 23, and 26(n)-(r) of Count One of this Superseding Indictment are incorporated here.

2. Paragraphs 2 and 3 of Count Two this Superseding Indictment are incorporated here.

3. On or about July 30, 2014, in the District of Maryland,

**ALDAIR GARCIA-MIRANDA,**
a/k/a "Callado,"
a/k/a "Poseido," and
**SELVIN RAYMUNDO SALAZAR,**
a/k/a "Little,"
a/k/a "Inquieto,"

did knowingly, intentionally, and unlawfully use, carry, brandish, and discharge a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, to wit: Conspiracy to Participate in a Racketeering Enterprise, in violation of 18 U.S.C. § 1962(d), and Conspiracy to Commit Murder in Aid of Racketeering and Attempted Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(5), as charged in Counts One, Two, and Three of this Superseding Indictment, which are incorporated here.

18 U.S.C. § 924(c)(1)(A)(iii)
18 U.S.C. § 2

Rod J. Rosenstein
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Date: July 6, 2015

18